

FILED
JAMES BONINI
CLERK

10 SEP 21 PM 1: 53

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT HENDRICKS            :       Case No.
4737 Rumpke Road
Cincinnati, OH 45245
                       :

-and-                   :

SCOTT SPITLER            :
3040 North Racine Avenue #1
Chicago, IL 60657         :
On behalf of themselves and all other
similarly-situated employees of Total    :
Quality Logistics, LLC

       Plaintiffs           :

                        **COLLECTIVE AND CLASS**
vs.                   :       **ACTION COMPLAINT**

                        :

TOTAL QUALITY LOGISTICS, LLC
4289 Ivy Pointe Blvd.         :
Cincinnati, OH 45245

                        :

Also serve: Statutory Agent

                        :

KMK Service Corp.
One East Fourth Street        :
Suite 1400
Cincinnati, OH 45202         :

-and-                   :

KENNETH OAKS           :
c/o Total Quality Logistics
4289 Ivy Pointe Blvd.         :
Cincinnati, OH 45202

                        :

       Defendants

Case No.

**1:10 CV 649**

**DLOTT**

1

Now come Plaintiffs Robert Hendricks and Scott Spitler, on behalf of themselves and all similarly-situated individuals, for their complaint against Defendants Total Quality Logistics LLC and Kenneth Oaks (hereinafter collectively referred to as "Defendants" and/or "TQL" and/or "Oaks") and state as follows:

## I. PRELIMINARY STATEMENT

Plaintiffs Robert Hendricks and Scott Spitler, on behalf of themselves and all similarly-situated individuals, bring this action pursuant to 29 U.S.C. §216 (b), as a representative action and pursuant to Fed. R. Civ. P. 23(b) as a class action, against Defendants seeking appropriate monetary, declaratory and injunctive relief based on Defendants' willful failure to compensate employees with sufficient overtime pay as required under the Federal Labor Standards Act of 1939 ("FLSA"), 29 U.S.C. §§ 201, et. seq. and the Ohio Minimum Fair Wage Standards Act, ORC §§4111.01, et. seq. Plaintiffs' allegations as to their own acts are based on personal knowledge and other allegations are made on information and belief.

## II. JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2201.

2. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

2

4. Defendant Total Quality Logistics LLC does business in this district and Defendant Kenneth Oaks is the President/CEO and principal owner of Defendant Total Quality Logistics, LLC.

5. Plaintiffs labored for Defendants within this district and a substantial part of the events or omissions giving rise to the claim occurred within this district.

### III. PARTIES

6. Plaintiff Robert Hendricks is an individual residing at 4737 Rumpke Road, Cincinnati, Ohio. From on or about September 10, 2007 until October 2009, Plaintiff Hendricks was employed by Defendants to perform inside sales or freight brokerage duties at Defendants' offices located at 4829 Ivy Pointe Boulevard in Cincinnati, Ohio.

7. Plaintiff Scott Spitler is an individual residing at 3040 North Racine Avenue, Chicago, Illinois. From July 2005 until March 2008, Plaintiff Spitler was employed by Defendants, to perform inside sales or freight brokerage duties at Defendants' offices located at 4829 Ivy Pointe Boulevard in Cincinnati, Ohio.

8. Plaintiffs Hendricks and Spitler bring this collective and class action on their own behalf and on behalf of all employees similarly situated who were employed by Defendants to perform inside sales or freight broker duties in positions which are currently referred to as "Logistics Account Executives ("LAE"); and Logistics Account Executive Trainees ("LAET"), but also are sometimes referred to as "Brokers" and "Assistant Brokers". Both Plaintiff Hendricks and Plaintiff Spitler have given their written consent to bring this action to collect unpaid overtime wages under the FLSA.

3

9. Throughout this Complaint, Plaintiffs Hendricks and Spitler are referred to as "Plaintiffs," except where otherwise indicated.

10. During all relevant times, Plaintiffs were employees covered by the FLSA, within the meaning of Section 3(e) of the FLSA, 29 U.S.C. §203(e),

11 Defendant Total Quality Logistics LLC is an Ohio corporation with its principal place of business in Cincinnati, Ohio and does business throughout the United States, including Ohio and this judicial district.

12. Defendant Kenneth Oaks is the CEO and owner of Defendant Total Quality Logistics LLC and has operational control over significant aspects of the company's day-to-day functions.

13. During all relevant times, Defendant Total Quality Logistics LLC was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

14. During all relevant times, Defendant Total Quality Logistics LLC was and is an enterprise regularly engaged in interstate commerce within the meaning of Sections 3(r) and 3(s)(1) of the FLSA, 29 U.S.C. §§ 203 ( r) and 203(s)(1).

15. During all relevant times, Defendant Kenneth Oaks was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §230(d).

## IV. FACTS

### A. Defendant Total Quality Logistics LLC's Operations

16. Defendant Total Quality Logistics LLC is a third-party logistics provider. TQL acts as a freight broker to match their customers with trucking companies to provide freight transportation. TQL maintains a large office building located at 4289 Ivy Pointe Blvd. in Cincinnati, Ohio where the majority of the company's inside sales employees work. The company

4

has recently opened smaller offices in Chicago, Illinois; Charlotte, North Carolina; Denver, Colorado; Tampa, Florida; and Charleston, South Carolina.

17. Defendant TQL does not engage in the transportation of goods. Its principal business is to broker "full truck load" shipments for its clients.

### B. Facts Pertaining to Plaintiff Robert Hendricks

18. Robert Hendricks was first employed by Defendants in a training position for inside sales currently called Logistics Account Executive Trainee ( LAET) or Assistant Broker and subsequently was transitioned to an inside sales position currently called Logistics Account Executive ( LAE) or Broker.

19. Hendricks was considered to be "in training" during his first six months of employment. He was paired with an LAE or Broker and supported the LAE/Broker's accounts by sourcing carriers, dispatching drivers and monitoring shipments. His training included learning about the industry, TQL's processes and sales techniques.

20. While employed as an LAET/Assistant Broker Hendricks initially was paid a salary of $36,500 per year, which was later raised to $38,000 per year. He was not eligible to earn any additional income.

21. As a LAET/Assistant Broker Hendricks was expected to transition to an LAE/Broker and move from salary to a commission pay system. This typically occurs within six to eighteen months after hire. Hendricks was promoted to LAE/Broker after being employed for approximately 12 months and thereafter received a draw applied against earned commissions.

22. Hendricks was encouraged to reduce his draw, so as to reduce the amount of money he was required to pay back or meet through earned commissions. Based on information and

5

belief, however, Hendricks avers that few LAE/Brokers ever generated enough commissions to pay back their draw and rarely earned more than their draw, regardless of the number of hours they worked each week, which exceeded 60 hours per week.

23. The primary duty of the LAE/Broker is to sell the company's brokerage services to customers. LAE/Brokers act as a liaison between TQL's customers and carriers, negotiate rates for the transport of the customer's goods, and manage the shipment of the customer's goods. LAE/Brokers also obtain new accounts for the company, which involves making cold calls to prospective customers in an effort to secure their business as a freight brokerage customer.

24. Although the stated office hours for both the LAET/Assistant Brokers and LAE/Brokers were from 7:45 a.m. to 5:15 p.m., Monday through Friday and from 8:00 a.m. to 12:00 noon on Saturday twice a month, in practice, Hendricks was expected as a condition of his employment to work much longer hours. The company's sales goals necessitated long work hours, typically 60-plus office hours per week.

25. In addition to the lengthy office hours, Hendricks was expected to be available 24 hours a day, seven days a week (24/7) to respond to customer problems or questions. Customer calls after office hours typically would require an additional 5-10 work hours per week.

26. Hendricks was further required to attend, without pay, company-held meetings in addition to the hours he was required to spend working on his accounts.

27. Defendants were aware of the long hours worked by Hendricks and other LAET/Assistant Brokers and LAE/Brokers and encouraged them to work long hours in order to increase Defendants' customer base and sales.

6

28. During the period of time Hendricks was compensated by payment of a salary he received no additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

29. During the period of time Hendricks was compensated by payment of commissions he received no additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

30. While employed by Defendants, Hendricks was not exempt from the overtime provisions of the FLSA and OMFWSA.

### C. Facts Pertaining to Plaintiff Scott Spitler

31. Scott Spitler worked for approximately six months as a LAET/Assistant Broker before transitioning to a LAE/Broker position.

32. As a LAET/Assistant Broker, Spitler worked with a LAE/Broker who had accumulated a number of business accounts and assisted him in servicing those accounts. In addition, Spitler also spent a substantial amount of time contacting prospective customers to build his own "book of business."

33. Once he became a Broker or LAE, Spitler spent most of his time working with his current customers and assisting them with their freight brokerage needs. He also spent a substantial amount of his work hours making cold calls by phone to generate new sales.

34. Spitler typically maintained office hours at the company from 6:00 a.m. to 7:00 p.m. Monday through Friday. He also frequently worked on Saturdays.

35. As was required of all inside sales employees, he was on call 24/7 and spent at least an additional 5-10 hours per week responding to after-hour calls. His average work week exceeded

7

70 hours per week. It was necessary that Spitler work these long hours in order to obtain the volume of business demanded by the company.

36. In addition to the lengthy work hours, Spitler was required to attend, without pay, company-held meetings.

37. Spitler's office was very close to that of company owner, Kenneth Oaks. Oaks was at the company much of the time when Sptiler was there and Spitler regularly observed Oaks walking through the work area where the brokers maintained their offices. Oaks was aware of the long hours worked by the sales employees.

38. Spitler was paid a salary of $30,000 per year as a LAET/Assistant Broker and following his transition to LAE/Broker was paid a draw based on $30,000 per year. During some periods, he was able to earn commissions that exceeded his draw, thus enabling him to earn monies beyond his draw.

39. At no time during his employment was Spitler paid any additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

40. While employed by Defendants, Sptiler was not exempt from the overtime provisions of the FLSA and OMFWSA.

## V. COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs bring their FLSA claims pursuant to 29 U.S.C. §216(b) as a representative action on behalf of the following opt-in class:

> All current and former Total Quality Logistics inside sales
> employees, sometimes known as Logistics Account
> Executives (LAE) or Brokers and Logistic Account Executive Trainees
> (LAET) or Assistant Brokers who worked in excess of 40 hours per
> week and were not compensated for overtime worked.

8

42. The Plaintiffs are similarly situated to all former and current inside sales employees, currently called LAE's or Brokers and LAET's or Assistant Brokers described in the above class.

43. The Plaintiffs seek to represent a class of all current and former inside sales employees (LAE/Brokers and LAET/Assistant Brokers) employed by Defendants during the preceding three-year period.

## VI. CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this cause of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of

> "All inside sales employees including LAE's or Brokers and LAET's or Assistant Brokers who have worked for Defendant Total Quality Logistics LLC in the state of Ohio between September 21, 2008 and the date of final judgment in this matter (the Ohio Class)."

45. The persons in the Ohio Class identified above are so numerous that joinder of all members is impracticable.

46. Although the precise number of such persons is not known to Plaintiffs, upon information and belief, the size of the Ohio Class exceeds 1,000 workers.

47. There are questions of law and fact common to the Ohio class, which include but are not limited to:

a. Whether Plaintiffs and the Ohio Class are entitled to overtime pay pursuant to ORC §4111.03 and §4111.10 for hours worked in excess of 40 hours per workweek under federal and state law;

b. Whether Defendants' policy of failing to pay overtime pay was based on Defendants' good faith and reasonable grounds.

9

c. Whether Defendant's policy of failing to pay overtime was instituted willfully or with reckless disregard of the law;

d. Whether Defendant correctly calculated and compensated the Plaintiffs and the Ohio Class for hours worked in excess of 40 per workweek.

48. The claims of the Plaintiffs are typical of the claims of the Ohio Class they seek to represent. The Plaintiffs and the Ohio Class members work or have worked for Defendants and have been subjected to a pattern and practice of failing to pay overtime wages for hours worked in excess of 40 hours per week.

49. The Plaintiffs will fairly and adequately represent and protect the interests of the Ohio Class.

a. The Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Ohio Class to represent its interest fairly and adequately.

b. The Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Ohio Class just as they would represent and consider their own interests.

c. The Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Ohio Class.

d. The Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Ohio Class.

e. The Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

10

50. The Plaintiffs have retained counsel competent and experienced in complex employment class actions.

51. This case is properly maintainable under Fed. R. Civ. P. 23(b)(3) as the questions of law and facts common to the Ohio Class predominate over questions affecting individual members of the Ohio class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

## VII. FIRST CAUSE OF ACTION

### (Violations of the Fair Labor Standards Act)

52 Plaintiffs incorporate by reference paragraphs 1 through 51 of this Complaint as though fully set forth here.

53. The FLSA requires that employees receive overtime compensation for hours worked in excess of 40 per week. 29 U.S.C. §207(a)(1).

54. Defendants have intentionally failed to pay the employees' required overtime compensation for hours worked in excess of 40 per week.

55. By the acts and conduct described above, Defendants have violated and are in violation of 29 U.S.C. §207(a)(1).

56. Defendants' conduct in failing to pay required overtime was willful and/or in reckless disregard of the rights of Plaintiffs and those similarly situated.

11

## VIII. SECOND CAUSE OF ACTION

### (Ohio Labor Law)

57. Plaintiffs incorporate by reference paragraphs 1 - 56 of this Complaint as though fully set forth herein.

58. Defendants failed to pay overtime wages to the Plaintiffs and the class in violation of Ohio Revised Code ORC §4111.03 and §4111.10.

59. Defendants' failure to comply with Ohio overtime protections caused Plaintiffs and the class to suffer loss of wages and interest thereon.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class are entitled to and pray for the following relief:

A. An Order permitting this case to proceed as a representative action and a class action;

B. Prompt notice, pursuant to 29 U.S.C. §216(b) to all class members that this litigation is pending and that they have the right to "opt-in" to this litigation;

C. An Order declaring that the Defendants violated the Fair Labor Standards Act;

D. An Order declaring that the Defendants' violation of the FLSA were willful;

E. An injunction prohibiting Defendants from engaging in future overtime violations.

F. An Order granting judgment to Plaintiffs and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages.

G. An Order awarding Plaintiffs and represented parties their costs and reasonable attorneys' fees; and

H.  With respect to the Ohio Class:

    1.  Certification of this action as a class action;

    2.  Designation of Plaintiffs as Class Representatives;

    3. An award of damages;

    4. Pre-judgment and Post-judgment interest, as provided by law;

    5. Such other injunctive and equitable relief as the Court may deem just and

proper; and

    6. Costs and attorneys' fees.

Respectfully submitted,

_____
Bruce H. Meizlish #0033361


_____
Deborah R. Grayson #0061777
MEIZLISH & GRAYSON
Attorneys for Plaintiffs
830 Main Street, Suite 999
Cincinnati, Ohio 45202
(513) 345-4700
Fax (513) 345-4703

13.