# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT HENDRICKS and<br>SCOTT SPITLER, et al. | : | Case No. 1:10CV00649 |
| Plaintiffs | : | COLLECTIVE AND CLASS ACTION<br>AMENDED CORRECTED |
| vs. | : | COMPLAINT |
| | : | |
| TOTAL QUALITY LOGISTICS, LLC,<br>and KENNETH OAKS | | |
| | : | |
| Defendants | | |

Now come Plaintiffs Robert Hendricks and Scott Spitler, by and through counsel, on behalf of themselves and all similarly-situated individuals, including those individuals who have, and will join this case as Party Plaintiffs, for their Amended Corrected Complaint against Defendants Total Quality Logistics LLC and Kenneth Oaks (hereinafter collectively referred to as "Defendants" and/or "TQL" and/or "Oaks") and state as follows:

## I. PRELIMINARY STATEMENT

Plaintiffs Robert Hendricks and Scott Spitler, on behalf of themselves and all similarly-situated individuals, bring this action pursuant to 29 U.S.C. §216 (b), as a representative action and pursuant to Fed. R. Civ. P. 23(b) as a class action, against Defendants seeking appropriate monetary and declaratory relief based on Defendants' willful failure to compensate employees with sufficient overtime pay as required under the Federal Labor Standards Act of 1939 ("FLSA"), 29 U.S.C. §§ 201, et seq. and the Ohio Minimum Fair Wage Standards Act, ORC §§4111.01, et seq.  Plaintiffs' allegations as to their own acts are based on personal knowledge and other allegations are made on information and belief.

## II. JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b) of the Fair Labor Standards Act, by 28 U.S.C. §1331, this action arising under laws of the United States, and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce. Jurisdiction over Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§2201 and 2201.

2. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

4. Defendant Total Quality Logistics LLC does business in this district and Defendant Kenneth Oaks is the President/CEO and principal owner of Defendant Total Quality Logistics, LLC.

5. Plaintiffs labored for Defendants within this district and a substantial part of the events or omissions giving rise to the claim occurred within this district.

## III. PARTIES

6. Plaintiff Robert Hendricks is an individual residing at 4737 Rumpke Road, Cincinnati, Ohio. From on or about September 10, 2007 until October 2009, Plaintiff Hendricks was employed by Defendants to perform inside sales or freight brokerage duties at Defendants' offices located at 4829 Ivy Pointe Boulevard in Cincinnati, Ohio.

7. Plaintiff Scott Spitler is an individual residing at 290 Chambers Road, Toughkenamon, Pennsylvania. From July 2005 until March 2008, Plaintiff Spitler was employed by Defendants, to perform inside sales or freight brokerage duties at Defendants' offices located at 4829 Ivy Pointe Boulevard in Cincinnati, Ohio.

8. Plaintiffs Hendricks and Spitler bring this collective and class action on their own behalf and on behalf of all employees similarly situated who were employed by Defendants to perform inside sales or freight broker duties in positions which are currently referred to as "Logistics Account Executives ("LAE"); and Logistics Account Executive Trainees ("LAET"), but also are sometimes referred to as "Brokers" and "Assistant Brokers". Both Plaintiff Hendricks and Plaintiff Spitler have given their written consent to bring this action to collect unpaid overtime wages under the FLSA.

9. Throughout this Complaint, Plaintiffs Hendricks and Spitler are referred to as "Plaintiffs," except where otherwise indicated.

10. During all relevant times, Plaintiffs were employees covered by the FLSA, within the meaning of Section 3(e) of the FLSA, 29 U.S.C. §203(e),

11 Defendant Total Quality Logistics LLC is an Ohio corporation with its principal place of business in Cincinnati, Ohio and does business throughout the United States, including Ohio and this judicial district.

12. Defendant Kenneth Oaks is the CEO and owner of Defendant Total Quality Logistics LLC and has operational control over significant aspects of the company's day-to-day functions.

13. From at least September 21, 2008, Defendant Total Quality Logistics LLC was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §203(d).

14. From at least September 21, 2008, Defendant Total Quality Logistics LLC was and is an enterprise regularly engaged in interstate commerce within the meaning of Sections 3(r) and 3(s)(1) of the FLSA, 29 U.S.C. §§ 203 ( r) and 203(s)(1).

15. From at least September 21, 2008, Defendant Kenneth Oaks was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. §230(d).

## IV. FACTS

### A. Defendant Total Quality Logistics LLC's Operations

16. Defendant Total Quality Logistics LLC is a third-party logistics provider. TQL acts as a freight broker to match their customers with trucking companies to provide freight transportation. TQL maintains a large office building located at 4289 Ivy Pointe Blvd. in Cincinnati, Ohio where the majority of the company's inside sales employees work. The company has recently opened smaller offices in Chicago, Illinois; Charlotte, North Carolina; Denver, Colorado; Tampa, Florida; Charleston, South Carolina; Columbus, Ohio; Indianapolis, Indiana and Lexington, Kentucky.

17. Defendant TQL does not engage in the transportation of goods. Its principal business is to broker "full truck load" shipments for its clients.

### B. Facts Pertaining to Plaintiff Robert Hendricks

18. Robert Hendricks was first employed by Defendants in a training position for inside sales currently called Logistics Account Executive Trainee (LAET) or Assistant Broker and subsequently was transitioned to an inside sales position currently called Logistics Account Executive (LAE) or Broker.

19. Hendricks was considered to be "in training" during his first six months of employment. He was paired with an LAE or Broker and supported the LAE/Broker's accounts by sourcing carriers, dispatching drivers and monitoring shipments. His training included learning about the industry, TQL's processes and sales techniques.

20. While employed as an LAET/Assistant Broker Hendricks initially was paid a salary of $36,500 per year, which was later raised to $38,000 per year. He was not eligible to earn any additional income.

21. As a LAET/Assistant Broker Hendricks was expected to transition to an LAE/Broker and move from salary to a commission pay system. This typically occurs within six to eighteen months after hire. Hendricks was promoted to LAE/Broker after being employed for approximately 12 months and thereafter received a draw applied against earned commissions.

22. Hendricks was encouraged to reduce his draw, so as to reduce the amount of money he was required to pay back or meet through earned commissions. Based on information and belief, however, Hendricks avers that few LAE/Brokers ever generated enough commissions to pay back their draw and rarely earned more than their draw, regardless of the number of hours they worked each week, which exceeded 60 hours per week.

23. The primary duty of the LAE/Broker is to sell the company's brokerage services to customers. LAE/Brokers act as a liaison between TQL's customers and carriers, negotiate rates for the transport of the customer's goods, and manage the shipment of the customer's goods. LAE/Brokers also obtain new accounts for the company, which involves making cold calls to prospective customers in an effort to secure their business as a freight brokerage customer.

24. Although the stated office hours for both the LAET/Assistant Brokers and LAE/Brokers were from 7:45 a.m. to 5:15 p.m., Monday through Friday and from 8:00 a.m. to 12:00 noon on Saturday twice a month, in practice, Hendricks was expected as a condition of his employment to work much longer hours. The company's sales goals necessitated long work hours, typically 60-plus office hours per week.

25. In addition to the lengthy office hours, Hendricks was expected to be available 24 hours a day, seven days a week (24/7) to respond to customer problems or questions. Customer calls after office hours typically would require an additional 5-10 work hours per week.

26. Hendricks was further required to attend, without pay, company-held meetings in addition to the hours he was required to spend working on his accounts.

27. Defendants were aware of the long hours worked by Hendricks and other LAET/Assistant Brokers and LAE/Brokers and encouraged them to work long hours in order to increase Defendants' customer base and sales.

28. During the period of time Hendricks was compensated by payment of a salary he received no additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

29. During the period of time Hendricks was compensated by payment of commissions he received no additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

30. While employed by Defendants, Hendricks was not exempt from the overtime provisions of the FLSA and OMFWSA.

**C. Facts Pertaining to Plaintiff Scott Spitler**

31. Scott Spitler worked for approximately six months as a LAET/Assistant Broker before transitioning to a LAE/Broker position.

32. As a LAET/Assistant Broker, Spitler worked with a LAE/Broker who had accumulated a number of business accounts and assisted him in servicing those accounts. In

addition, Spitler also spent a substantial amount of time contacting prospective customers to build his own "book of business."

33. Once he became a Broker or LAE, Spitler spent most of his time working with his current customers and assisting them with their freight brokerage needs. He also spent a substantial amount of his work hours making cold calls by phone to generate new sales.

34. Spitler typically maintained office hours at the company from 6:00 a.m. to 7:00 p.m. Monday through Friday. He also frequently worked on Saturdays.

35. As was required of all inside sales employees, he was on call 24/7 and spent at least an additional 5-10 hours per week responding to after-hour calls. His average work week exceeded 70 hours per week. It was necessary that Spitler work these long hours in order to obtain the volume of business demanded by the company.

36. In addition to the lengthy work hours, Spitler was required to attend, without pay, company-held meetings.

37. Spitler's office was very close to that of company owner, Kenneth Oaks. Oaks was at the company much of the time when Sptiler was there and Spitler regularly observed Oaks walking through the work area where the brokers maintained their offices. Oaks was aware of the long hours worked by the sales employees.

38. Spitler was paid a salary of $30,000 per year as a LAET/Assistant Broker and following his transition to LAE/Broker was paid a draw based on $30,000 per year. During some periods, he was able to earn commissions that exceeded his draw, thus enabling him to earn monies beyond his draw.

39. At no time during his employment was Spitler paid any additional compensation for hours worked in excess of 40 hours per week as required by the FLSA and OMFWSA.

40. While employed by Defendants, Sptiler was not exempt from the overtime provisions of the FLSA and OMFWSA.

## V. COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs bring their FLSA claims pursuant to 29 U.S.C. §216(b) as a representative action on behalf of the following opt-in class:

> All current and former Total Quality Logistics inside sales employees, sometimes known as Logistics Account Executives (LAE) or Brokers and Logistic Account Executive Trainees (LAET) or Assistant Brokers who worked in excess of 40 hours per week and were not compensated for overtime worked.

42. The Plaintiffs are similarly situated to all former and current inside sales employees, currently called LAE's or Brokers and LAET's or Assistant Brokers described in the above class.

43. The Plaintiffs seek to represent a class of all current and former inside sales employees (LAE/Brokers and LAET/Assistant Brokers) employed by Defendants during the preceding three-year period.

## VI. CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this cause of action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of

> "All inside sales employees including LAE's or Brokers and LAET's or Assistant Brokers who have worked for Defendant Total Quality Logistics LLC in the state of Ohio between September 21, 2008 and the date of final judgment in this matter (the Ohio Class)."

45. The persons in the Ohio Class identified above are so numerous that joinder of all members is impracticable.

46. Although the precise number of such persons is not known to Plaintiffs, upon information and belief, the size of the Ohio Class exceeds 1,000 workers.

47. There are questions of law and fact common to the Ohio class, which include but are not limited to:

a. Whether Plaintiffs and the Ohio Class are entitled to overtime pay pursuant to ORC §4111.03 and §4111.10 for hours worked in excess of 40 hours per workweek under federal and state law;

b. Whether Defendants' policy of failing to pay overtime pay was based on Defendants' good faith and reasonable grounds.

c. Whether Defendant's policy of failing to pay overtime was instituted willfully or with reckless disregard of the law;

d. Whether Defendant correctly calculated and compensated the Plaintiffs and the Ohio Class for hours worked in excess of 40 per workweek.

48. The claims of the Plaintiffs are typical of the claims of the Ohio Class they seek to represent. The Plaintiffs and the Ohio Class members work or have worked for Defendants and have been subjected to a pattern and practice of failing to pay overtime wages for hours worked in excess of 40 hours per week.

49. The Plaintiffs will fairly and adequately represent and protect the interests of the Ohio Class.

    a. The Plaintiffs understand that, as class representatives, they assume a fiduciary responsibility to the Ohio Class to represent its interest fairly and adequately.

    b. The Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Ohio Class just as they would represent and consider their own interests.

    c. The Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Ohio Class.

    d. The Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Ohio Class.

    e. The Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

    50. The Plaintiffs have retained counsel competent and experienced in complex employment class actions.

    51. This case is properly maintainable under Fed. R. Civ. P. 23(b)(3) as the questions of law and facts common to the Ohio Class predominate over questions affecting individual members of the Ohio class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

## VII.  FIRST CAUSE OF ACTION

### (Violations of the Fair Labor Standards Act)

52  Plaintiffs incorporate by reference paragraphs 1 through 51 of this Complaint as though fully set forth here.

53.  The FLSA requires that employees receive overtime compensation for hours worked in excess of 40 per week.  29 U.S.C. §207(a)(1).

54. Defendants have intentionally failed to pay the employees' required overtime compensation for hours worked in excess of 40 per week.

55.  By the acts and conduct described above, Defendants have violated and are in violation of 29 U.S.C. §207(a)(1).

56.  Defendants' conduct in failing to pay required overtime was willful and/or in reckless disregard of the rights of Plaintiffs and those similarly situated.

## VIII.  SECOND CAUSE OF ACTION

### (Ohio Labor Law)

57.  Plaintiffs incorporate by reference paragraphs 1 - 56 of this Complaint as though fully set forth herein.

58.  Defendants failed to pay overtime wages to the Plaintiffs and the class in violation of Ohio Revised Code ORC §4111.03 and §4111.10.

59.  Defendants' failure to comply with Ohio overtime protections caused Plaintiffs and the class to suffer loss of wages and interest thereon.

## IX. THIRD CAUSE OF ACTION

### (Retaliation - Matthew Bowlin)

60. Matthew Bowlin was hired by TQL as an LAET on or about June 15, 2009. At the time of his hire, Bowlin and Defendant TQL entered into a Memo of Understanding - Relocation Assistance Agreement (Relocation Agreement) in which Defendant TQL agreed to reimburse Bowlin for certain expenses related to his relocation to the area. In the Relocation Agreement, Bowlin agreed to reimburse Defendant TQL for the bonus amount should his employment terminate within two years of his hire date of June 15, 2009. In the Relocation Agreement, Bowlin further agreed that:

> "By signing this Memorandum of Understanding, I authorize deductions from any and all final paycheck(s), including regular pay, commission, vacation and/or bonus, for reimbursement of any outstanding balance of this bonus I owe to Total Quality Logistics."

61. Mr. Bowlin's employment terminated on or about August 6, 2010.

62. Deducted from Mr. Bowlin's final paycheck by Defendant TQL was the sum of $554.24 as repayment for the relocation bonus. The gross amount of Mr. Bowlin's final check was sufficiently large that the entire amount of the bonus could have been deducted, but Defendant chose not to do so.

63. With the exception of the deduction from Mr. Bowlin's final check, Defendants made no effort to collect any further amount in repayment of the relocation bonus until Defendants filed a Counterclaim against Mr. Bowlin on November 19, 2010.

64. Mr. Bowlin engaged in a protected activity under the Fair Labor Standards Act by filing a Notice of Consent to Become Party Plaintiff in this case on October 19, 2010 and this activity was known to Defendants.

65. Defendants filed their Counterclaim against Mr. Bowlin on November 19, 2010, seeking repayment of monies he was paid in relocation expenses with a retaliatory motive and without a reasonable basis in fact or law.

66. The filing of the Counterclaim by Defendants against Plaintiff Bowlin violated the FLSA's anti-retaliation provision found at 29 U.S.C. §215(a)(3).

## X.  FOURTH CAUSE OF ACTION

### (Retaliation - Patrick McNichols)

67. Patrick McNichols was hired by Defendant TQL as an LAET on or about July 15, 2007.  At the time of his hire, McNichols and Defendant TQL entered into an agreement in which TQL agreed to pay to McNichols a recruitment bonus in the amount of $2,000.00.  In the Recruitment Bonus Agreement, McNichols agreed that:

> "I further understand that should my employment with Total Quality Logistics terminate for any reason within two years of my hire date on Monday, July 16, 2007 (sic), I will be responsible at termination for reimbursement of that bonus amount to the company."

68. Mr. McNichols voluntarily resigned his employment on or about December 1, 2007.

69. Defendants deducted from Mr. McNichols' final paycheck an amount applied to reimbursement of the recruitment bonus, but leaving a small amount payable to Mr. McNichols.

70. Defendants chose not to deduct the entire amount although it had the opportunity to do so.

71. Defendants made no effort to collect any further amount for reimbursement of the recruitment bonus until Defendants filed their Counterclaim on November 19, 2010.

72. Plaintiff McNichols engaged in a protected activity under the FLSA by filing a Notice of Consent to Become Party-Plaintiff in this case on October 28, 2010 and this activity was known to Defendants.

73. Defendants filed their Counterclaim against Plaintiff McNichols with retaliatory motive and without a reasonable basis in fact or law.

74. The filing of the Counterclaim by Defendants against Plaintiff McNichols violated the FLSA's anti-retaliation provision found at 29 U.S.C. §215(a)(3).

## XI. FIFTH CAUSE OF ACTION

### (Retaliation - Justin Ackerman)

75. Justin Ackerman began his employment with Defendant in 2005, first as a Logistics Coordinator and subsequently, as an Assistant Broker (LAET) and later as a Broker (LAE).

76. On January 17, 2008, Mr. Ackerman signed an Employee Non-Compete Confidentiality and Non-Solicitation Agreement (Employee Agreement), attached as Exhibit F to Defendants' Counterclaim.

77. Pursuant to the Employment Agreement, Mr. Ackerman agreed that he would not be employed by any Competing Business (¶8(b)(i) or disrupt the relationship between TQL and any Customer (¶8(b)(iv).

78. In January 2010, Mr. Ackerman made an inquiry of possible employment to an air freight broker, engaged in a separate type of business from Defendant TQL. Prior to making the inquiry, Mr. Ackerman had received reasonable assurances from his managers that the

14

prospective employer was not engaged in a Competing Business within the meaning of his Employment Agreement.

79. Mr. Ackerman was terminated on January 5, 2010 on the basis of his inquiry. Defendants asserted no claim against Mr. Ackerman connected to his termination until filing their Counterclaim on November 19, 2010.

80. Mr. Ackerman engaged in a protected activity under the FLSA by filing a Notice of Consent to Become Party Plaintiff on October 29, 2010 and this activity was known to Defendants.

81. Defendants filed their Counterclaim against Plaintiff Ackerman with a retaliatory motive and without a reasonable basis in fact or law.

82. The filing of the Counterclaim by Defendants against Plaintiff Ackerman violated the FLSA's anti-retaliation provision found at 29 U.S.C. §215(a)(3).

## XII.  SIXTH CAUSE OF ACTION

### (Retaliation - Drew Donner)

83. Drew Donner became employed by Total Quality Logistics in April 2008.

84. On or about June 30, 2008, Mr. Donner signed a Memo of Understanding - Relocation Bonus, pursuant to which the sum of $1,400.00 was paid to Mr. Donner, subject to repayment should he leave before two years of his hire date, incorrectly given as June 30, 2008.

85. Mr. Donner further agreed that by signing the Agreement:

> "I authorize deduction from any and all final paycheck(s), including regular pay, commission, vacation and/or bonus the reimbursement of any outstanding balance of this bonus I owe Total Quality Logistics."

86. Mr. Donner's employment terminated on or about April 24, 2010.

87. Deducted from Mr. Donner's final paycheck was a sum for repayment of his Relocation Bonus, leaving a balance of payment for Mr. Donner. Mr. Donner subsequently received commission checks from which no monies for reimbursement of the Relocation Bonus were made.

88. Defendants made no efforts to collect any further amount for reimbursement of the Relocation Bonus until Defendants filed their Counterclaims on November 19, 2010.

89. Mr. Donner engaged in a protected activity under the FLSA by filing a Notice of Consent to Become Party Plaintiff on November 2, 2010 and this activity was known to Defendants.

90  Defendants filed their Counterclaim against Mr. Donner with retaliatory motive and without a reasonable basis in fact or law.

91. The filing of the Counterclaim by Defendants against Plaintiff Donner violated the FLSA's anti-retaliatory provisions found at 29 U.S.C. §215(a)(3).

## XIII.  SEVENTH CAUSE OF ACTION

### (Retaliation - Scott Spitler)

92. Scott Spitler was employed by Defendant Total Quality Logistics in July 2005, first as a Night Dispatcher, then Assistant Broker (LAET) and finally as a Broker (LAE).

93. At the insistence of Defendants, Mr. Spitler signed an Employment Agreement with Defendant TQL on January 21, 2003, which is attached to the Defendants' Counterclaim filed on November 19, 2010 as Exhibit C.

16

94. Mr. Spitler's employment with Defendant TQL was terminated on or about March 21, 2008.

95. Defendants made no claims against Mr. Spitler for breach of the Employment Agreement, misappropriation of trade secrets, breach of duty of loyalty and good faith, or conversion and for attorneys' fees, until filing its Counterclaim against Plaintiff Spitler on November 19, 2010. As the factual predicate for these legal allegations, Defendants allege that Plaintiff Spitler emailed to his personal email address and to a former TQL employee, documents containing TQL trade secrets and confidential information, including but not limited to customer lists and pricing information, an allegation with Mr. Spitler specifically denies.

96. Mr. Spitler engaged in a protected activity under the FLSA by filing a Complaint in this matter on September 21, 2010 and by filing his consent to become a Party Plaintiff on September 22, 2010 and this activity was known to Defendants.

97. Defendants filed their Counterclaim against Plaintiff Spitler with retaliatory motive and without a reasonable basis in fact or law.

98. The filing of the Counterclaim by Defendants against Plaintiff Spitler violated the FLSA's anti-retaliatory provisions found at 29 U.S.C. §215(a)(3).

### VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class are entitled to and pray for the following relief:

A. An Order permitting this case to proceed as a representative action and a class action;

B. An Order declaring that the Defendants violated the Fair Labor Standards Act;

C. An Order declaring that the Defendants' violation of the FLSA were willful;

D.  An Order granting judgment to Plaintiffs and represented parties for their claims of unpaid wages as secured by the Fair Labor Standards Act, as well as an equal amount in liquidated damages.

E.  An Order awarding Plaintiffs and represented parties their costs and reasonable attorneys' fees;

F.  An Order declaring that the Defendants violated the Fair Labor Standards Act by retaliating against Matthew Bowlin, Patrick McNichols, Justin Ackerman, Drew Donner and Scott Spitler for participating in this lawsuit.

G.  An Order awarding the Plaintiffs identified in paragraph F damages as provided by the FLSA and their costs and reasonable attorneys' fees.

H.  With respect to the Ohio Class:

   1. Certification of this action as a class action;

   2. Designation of Plaintiffs as Class Representatives;

   3. An award of damages;

   4. Pre-judgment and Post-judgment interest, as provided by law;

   5. Such other injunctive and equitable relief as the Court may deem just and proper; and

   6. Costs and attorneys' fees.

Respectfully submitted,

s/ Bruce H. Meizlish

Bruce H. Meizlish #0033361

18

        s/Deborah R. Grayson

        Deborah R. Grayson #0062777
        MEIZLISH & GRAYSON
        Attorneys for Plaintiffs
        830 Main Street, Suite 999
        Cincinnati, Ohio 45202
        (513) 345-4700
        Fax (513) 345-4703

## **CERTIFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing Collective and Class Action Amended Corrected Complaint was served upon counsel for the Defendants via the Court's electronic filing system this 23[h] day of May, 2011.

        Bruce H. Meizlish
        Bruce H. Meizlish