**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Robert Hendricks, *et al*.,

        Plaintiffs,                              Case No.  1:10cv649

        v.                                  Judge Michael R. Barrett

Total Quality Logistics, LLC, *et al*.,

        Defendants.

## ORDER & OPINION

This matter is before the Court upon Defendants Total Quality Logistics, LLC and Kenneth Oaks' Post-Trial Motion to Decertify.  (Doc. 568).  Plaintiffs filed a Response in Opposition (Doc. 572); and Defendants filed a Reply (Doc. 573).

## I.    BACKGROUND

Plaintiffs are former Logistics Account Executives ("LAEs") and Logistics Account Executive Trainees ("LAETs") employed by Defendant Total Quality Logistics LLC ("TQL").  TQL is a third-party logistics provider.  Defendant Kenneth Oaks is TQL's Chief Executive Officer.

Plaintiffs allege that Defendants did not pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act"), Ohio Revised Code § 4111.01, *et seq*.  Defendants maintain that Plaintiffs are exempt from the overtime-pay requirement under the FLSA "administrative exemption" which applies if the employee is one (1) who earns at least $455 per week; (2) "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the

employer or the employer's customers;" and (3) "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).[1]  The applicable FLSA regulations define an employee's "primary duty" as the "principal main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a).   Only the management/business operations prong and the discretion/independent judgment prong of the administrative exemption are at issue in this case.[2]

This Court has certified two subclasses under Federal Rule of Civil Procedure 23: (1) all LAETs who worked for TQL in the State of Ohio between September 21, 2008 and April 15, 2016; and (2) all "Junior LAEs" who worked for TQL in Ohio between September 21, 2008 and April 15, 2016.  (Doc. 378).  The Court also certified two § 216(b) FLSA collectives using the same definitions, but covering the time period from February 14, 2008 to April 15, 2016. (Doc. 395).

This matter was before the Court for a thirteen-day bench trial from February 15, 2022, to March 4, 2022.  Defendants now seek to decertify the Rule 23 subclass of LAETs, the Rule 23 subclass of Junior LAEs, the FLSA § 216(b) sub-collective of LAETs, and the FLSA § 216(b) sub-collective of Junior LAEs.

---

[1]Ohio's overtime statute incorporates the exemptions to the FLSA. *See* Ohio Rev. Code § 4111.03(A) ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of . . . the 'Fair Labor Standards Act of 1938'").

[2]The parties agree that the first prong can be established through common proof with regard to both LAETs and Junior LAEs. (Doc. 273, PAGEID 4314; Doc. 337, PAGEID 9225).

Defendants maintain that (1) the LAET subclass cannot satisfy the Rule 23 requirements, and therefore must be decertified; (2) the FLSA § 216(b) LAET sub-collective must be decertified for the same reason; (3) the members of the Junior LAE subclass and Junior LAE sub-collective are unascertainable; (4) the certification of the Junior LAE subclass and Junior LAE sub-collective was legally improper; and (5) the evidence at trial demonstrated that any analysis as to whether Junior LAEs were exempt from the overtime compensation requirement would require individualized inquiries, and therefore class or collective treatment is not proper.

Because the factual background of this case has been detailed in previous orders (Docs. 273, 337, 378, 395), the Court will not repeat the same here.

**II.   ANALYSIS**

**A.   Decertification Under Rule 23(c)(1)(C)**

Federal Rule of Civil Procedure 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." This means that a district court has a "continuing obligation to ensure that the class certification requirements are met," and must "alter or amend the certification order as circumstances change and the parties' litigation strategies evolve." *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (citing *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997)); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013) (explaining that even after certification, a district court "must still inquire into the adequacy of representation and withdraw class certification if adequate representation is not furnished."); *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 387 (S.D. Ohio 2001) ("Even after certification, the district court may decertify a class if there is a subsequent showing

3

that the grounds for granting certification no longer exist or never existed."). Therefore, a district court may decertify a class after a trial on the merits but before final judgment. *Garcia v. Tyson Foods, Inc*., 890 F. Supp. 2d 1273, 1297 (D. Kan. 2012) (collecting cases and authorities), *aff'd*, 770 F.3d 1300 (10th Cir. 2014); *see also Mazzei v. Money Store*, 829 F.3d 260, 266-67 (2d Cir. 2016) ("The power to decertify a class after trial when appropriate is therefore not only authorized by Federal Rule 23 but is a corollary.").

However, "decertification is a 'drastic step,' not to be taken lightly." *In re Polyurethane Foam Antitrust Litig*., No. 1:10 MD 2196, 2015 WL 4459636, at *2 (N.D. Ohio July 21, 2015) (quoting Newberg on Class Actions § 7:37 at 190 (3rd ed.1992)); *see also Glazer v. Whirlpool Corp*., 2014 WL 7781167, at *1 (N.D. Ohio 2014) (decertification "is not to be taken lightly or without definitive, material alteration of the law or facts"). Courts are divided as to who bears the burden of proof on a motion to decertify a class. *See In re Whirlpool Corp. Front-Loading Dishwasher Prods. Liab. Litig*., 302 F.R.D. 448, 459 (N.D. Ohio 2014); *Norman v. Trans Union, LLC*, No. CV 18-5225, 2023 WL 2903976, at *8 (E.D. Pa. Apr. 11, 2023) (collecting cases). Yet, even those courts which place the burden on the plaintiffs to show that the Rule 23 requirements are met, still require a defendant seeking decertification or modification to make some showing of changed circumstances or law in order to trigger a plaintiffs' obligation to defend certification. Newberg on Class Actions § 7:39 (6th ed. 2023); *see, e.g., In re FCA US LLC Monostable Elec. Gearshift Litig*., 340 F.R.D. 251, 254 (E.D. Mich. 2022) ("the party moving for decertification must advance at least some credible facts or authority suggesting that the Court erred in its evaluation of the propriety of class certification.") (quoting *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d at 619 (holding that district court did not err in continuing

4

class certification because defendant had offered no evidence of the purported inadequacy of a challenged class representative)); *Glazer*, 2014 WL 7781167, *1 (explaining that defendant had "not met its heavy burden of demonstrating that continued class action treatment is improper."); *Mazzei v. Money Store*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015) (explaining that a court may not decertify a class and "disturb its prior findings absent some significant intervening event or a showing of compelling reasons to reexamine the question."), *aff'd*, 829 F.3d 260 (2d Cir. 2016).[3]

While Defendants have attempted to marshal the evidence to demonstrate the differences between class members, the Court finds that the testimony at trial aligns with this Court's previous rulings on class certification (Docs. 273, 337) and class decertification (Doc. 448). As the discussion below illustrates, decertification is not warranted despite the more fully developed factual record after the trial on the merits.

"To be certified, a class must satisfy all four of the Rule 23(a) prerequisites— numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998)). The LAET and Junior LAE subclasses were certified pursuant to

---

[3]Defendants cite *Chesher v. Neyer*, No. 1:01-CV-00566, 2005 WL 1683698, at *4 (S.D. Ohio July 19, 2005) for the proposition that the burden is on the plaintiff on a motion for decertification. (Doc. 568, PAGEID 22877). Defendants provide the following quote from *Chesher*: "To defeat decertification, the burden of proof is on the plaintiffs to establish by a preponderance of the evidence that the requirements of Fed. R. Civ. P. 23(a) and (b) are met." However, this quoted language comes from the part of the decision where the Court is setting forth the parties' respective arguments and is not the holding of the case. In fact, the Court denied the defendants' motions for decertification and noted that "when a party seeks decertification of a class, the party so seeking 'bears a heavy burden to show that there exists clearly changed circumstances that make continued class action treatment improper.'" *Id*. at *9 (quoting *In re Atlantic Fin. Fed. Sec. Litig.*, 1992 WL 50072, *2 (E.D. Pa., Feb. 28, 1992)).

Rule 23(b)(3), which permits a class to be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In addition, the Sixth Circuit has held that "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d 452, 464 (6th Cir. 2020) (quoting *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 466 (6th Cir. 2017)).  To satisfy the "implied ascertainability requirement," the "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class*." Young v. Nationwide Mut. Ins. Co*., 693 F.3d at 537-38 (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997)).

Just as they did in their previous motion for decertification (Doc. 448, PAGEID 15925), Defendants challenge the prerequisites of commonality and typicality for the subclass of LAETs.  Defendants also argue that predominance and superiority are lacking for the LAET subclass.  As to the members of the Junior LAE subclass, Defendants argue that the class of the Junior LAEs does not meet the ascertainability requirement; and the creation of the Junior LAE class was legally improper.

### 1.  <u>Commonality and typicality for LAET subclass</u>

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370, 72

L. Ed. 2d 740 (1982)). To satisfy commonality, the plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d at 458 (quoting *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 542 (6th Cir. 2012)).

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit*., 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 399 (6th Cir. 1998)). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and if his claims are based on the same legal theory." *Grae v. Corr. Corp. of Am*., 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (citing *In re Am. Med. Sys., Inc*., 75 F.3d at 1082). "[A] necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young*, 693 F.3d at 542 (quoting *Sprague*, 133 F.3d at 399).

Commonality and typicality "tend to merge" in practice because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig*., 722 F.3d at 853 (quoting *Dukes*, 564 U.S. at 349 n.5).

7

Defendants maintain that commonality and typicality are lacking because LAETs had different job duties and were given varied amounts of discretion and independent judgment.[4] To support their argument that an individualized inquiry will be necessary to determine if LAETs are administratively exempt, Defendants once again cite to this Court's decision in *Wade v. Werner Trucking Co*., No. 2: 10-cv-270, 2014 WL 1091707 (S.D. Ohio Mar. 18, 2014). However, as this Court explained in its prior decertification opinion, *Wade* was a ruling on cross-motions for summary judgment and "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." (Doc. 448, PAGEID 15929) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). This Court reiterates that the merits of a party's claim "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.[5]

---

[4]Defendants argue that:

The factual grounds on which the Court previously found commonality and typicality to be met were not demonstrated at trial. The Court concluded that every LAET's "primary duty" was to "participate in [TQL]'s extensive training program" and "monitoring the delivery of freight." (Doc. 448, PageID 15927.)

(Doc. 568, PAGEID 22902). However, a complete reading of the Court's previous orders makes it clear that the Court did not reach a conclusion regarding the "primary duty" of LAETs as that term is used in 29 C.F.R. § 541.700(a). Instead, the Court noted that "the primary duties of LAETs were to participate in Defendant's extensive training program; and monitoring the delivery of freight and 'covering freight' for LAEs." (Doc. 448, PAGEID 15927). In other words, the use of the term was to reference "primary responsibilities and tasks performed" (Doc. 273, PAGEID 4315) and was not reaching a legal conclusion on the merits.

[5]As one district court has recently and aptly explained:

The underlying merits of the case, while somewhat relevant, should not cloud the Court's decertification analysis—the only question is whether the requirements of Rule 23 (e.g., commonality and predominance) continue to be met. *See Comcast*, 569 U.S. at 33–34. The fact that certain elements of proof may favor the defendant

For that same reason, the Court declines to address an argument presented by Plaintiffs: that the administrative exemption does not apply to the LAETs because under 29 C.F.R. § 541.705, the administrative exemption does not apply to employees training for employment in an administrative employee capacity who are not actually performing the duties of an administrative employee. This is an issue the Court will reach in its decision on the merits.

To illustrate how the merits may come into play when determining whether the Rule 23 prerequisites for class certification are satisfied, the Court will turn to another decision from this Court cited by Defendants: *Hardesty v. Kroger Co.*, No. 1:16-CV-298, 2018 WL 4680801 (S.D. Ohio Sept. 28, 2018). In *Hardesty*, the Court concluded that the commonality requirement had not been met because there was conflicting testimony from proposed class members regarding whether they exercised discretion in performing their duties. *Id.*, *3. In attempt to bring this case in line with *Hardesty*, Defendants go to great lengths to highlight trial testimony which would indicate that LAETs also had different experiences when it came to exercising discretion. However, the exercise of discretion only pertains to the discretion/independent judgment prong of the

---

on the merits does not negate class certification; the issue is whether the proof is amenable to class treatment. Moreover, "[n]either the possibility that a plaintiff will be unable to prove [her] allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for [decertifying] a class which apparently satisfies the Rule." *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

*Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2023 WL 3919462, at *3 (N.D. Cal. June 8, 2023); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457, 136 S. Ct. 1036, 1047, 194 L. Ed. 2d 124 (2016) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009) (when "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.").

administrative exemption. Under the management/business operations prong, Defendants must also demonstrate that the "primary duty" of an LAET "is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200 (a)(2).[6] In other words, it does not matter what level of discretion and independent judgment LAETs exercised as part of their primary duty if their primary duty is not directly related to TQL's management or general business operations. In *Hardesty*, the question of whether the primary duty of the plaintiffs was directly related to the management or general business operations of the employer or the employer's customers was never raised. However, in this case, the management/business operations prong of the administrative exemption is at issue. If the Court were to conclude that the primary duty of LAETs is not directly related to the management or general business operations of the employer or the employer's customers, it will be unnecessary to decide whether Plaintiffs' primary duty included the exercise of discretion and independent judgment with respect to matters of significance. Moreover, the Court may find there is insufficient evidentiary support to satisfy the discretion/independent judgment prong based on the Court's credibility determination of certain witnesses. That is a consideration reserved for the Court's merits analysis. *Accord Dorsey v. Aviva Metals, Inc*., No. 1:20-CV-02014, 2022 WL 4536393, at *6 (N.D. Ohio Sept. 28, 2022) (citing *Amgen*, 568 U.S. at 465-66) (declining to consider question of fact regarding when manufacturing employees physically started work as part of analysis of whether the Rule 23 prerequisites for class certification are satisfied); *see*

---

[6]As the Sixth Circuit has explained, the applicability of an FLSA exemption is an affirmative defense and therefore, the employer has the burden to establish each element of an exemption by a preponderance of the evidence. *Renfro v. Indiana Michigan Power Co*., 497 F.3d 573, 576 (6th Cir. 2007).

*also Davis v. Charter Foods, Inc*., No. 2:20-CV-00159-CEA, 2022 WL 16778063, at *11 (E.D. Tenn. Mar. 21, 2022), report and recommendation adopted, No. 2:20-CV-159, 2022 WL 15085626 (E.D. Tenn. Oct. 26, 2022) ("To reject Plaintiffs' claims of commonality would require the Court to address the facts at a deeper level than what is permitted when considering whether to certify a class.").

At this juncture, the Court is not deciding liability. Instead, the Court is determining whether the resolution of Plaintiffs' claims involves common questions of fact and law. *See Dorsey v. Aviva Metals, Inc*., 2022 WL 4536393, at *9 (explaining that even though there were individual questions regarding how much compensable time was lost, those differences do not "displace common questions of fact and law regarding [ ] liability."); *see also Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184 (S.D. Ohio 2012) (quoting *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) ("Although plaintiffs' claims may raise individualized questions regarding the number of hours worked and how much each employee was entitled to be paid, those differences go to the damages that each employee is owed, not to the common question of Defendant['s] liability."). Commonality exists when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." *Bacon v. Honda of America Mfg., Inc*., 370 F.3d 565, 570 (6th Cir. 2004) (citing *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

When this Court initially certified the LAET subclass, this Court identified the following central common question: whether TQL misclassified LAETs as exempt from the overtime provisions of the Ohio Wage Act. (Doc. 273, PAGEID 4314; Doc. 337, PAGEID 9221). This remains the central common question. There was nothing

11

presented at trial which alters this Court's conclusion that "the parties will be able to submit common proof on the issues of whether these duties satisfy the management/business operations prong and the discretion/independent judgment prong of the administrative exemption."  (Doc. 273, PAGEID 4315; see also Doc. 337, PAGEID 9225-9226).   In addition, the Court reverts to its previous finding that with respect to variations in training and duties, those issues are better addressed under the Rule 23(b)(3)'s predominance requirement.  (Doc. 448, PAGEID 15932).

Similarly, "[w]here, as here, it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. at 185 (quoting *Laichev v. JBM, Inc*., 269 F.R.D. 633, 640-41 (S.D. Ohio 2008).  Stated differently, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter v. Gen. Motors Corp*., 532 F.2d 511, 525 n. 31 (6th Cir.1976)). "Thus, many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct." *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 509 (6th Cir. 2015) (emphasis added) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1764 (3d ed. 2005)).

In its previous ruling on class certification, this Court determined: "The claims of the named Plaintiffs and the putative class members arise from the same practice (misclassification), affect the class members in the same manner (class members were

denied overtime wages), and arise from the same legal theory (violation of the Ohio Wage Act)." (Doc. 273, PAGEID 4320; Doc. 337, PAGEID 9228). The Court notes that the claims and defenses in this case have not changed since the Court initially found the typicality requirement satisfied, or subsequent to this Court's denial of Defendant's Motion to Decertify. (Doc. 448, PAGEID 5934).

Therefore, the Court concludes that for the Rule 23 subclass of LAETs, the commonality and typicality prerequisites are satisfied.

### 2. Predominance and superiority for LAET subclass

In the time since this Court has last addressed the issue of predominance in this case, the Sixth Circuit has helpfully summarized the applicable caselaw in this area as follows:

> A class may be certified based on a predominant common issue "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123–24 (3d ed. 2005). In *Young v. Nationwide Mutual Insurance Co.*, we explained "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." 693 F.3d at 544 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). And in *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, we concluded that "when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." 722 F.3d at 850 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 41, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (Ginsburg, J., dissenting)).

*Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020).

With regards to superiority, there four factors the Court must consider in determining whether Plaintiffs have demonstrated that a class action is the superior means for adjudicating the dispute are set forth in the rule itself:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  As the Sixth Circuit has recently observed: "Problems emerge on these predominance and superiority fronts, most acutely, when a controlling issue requires individualized determinations ill-equipped for classwide proof."  *Tarrify Properties, LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022) (citing *Sandusky Wellness Ctr.*, 863 F.3d at 468-472).  The Court will now turn to applying these principles to Rule 23 subclass of LAETs in light of the evidence presented at trial.

As Defendants point out, in its prior order denying decertification, the Court held that common issues predominated based on: (1) the LAETs' training materials and 26-week training schedule; and (2) the similarity in LAETs' day-to-day activities.[7]  (Doc. 448, PAGEID 15938-15944).

---

[7]In its briefing, Defendants state that the Court's decision was also based on TQL's company-wide classification of LAETs.  This is not exactly the case.  Instead, the Court explained:

As explained above, the common question is whether TQL misclassified LAETs and Junior LAEs as exempt from the overtime provisions of the Ohio Wage Act. The Ninth Circuit has explained that "[a]n internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009).  However, the court ultimately held that even though "uniform exemption policies are relevant to the Rule 23(b)(3) analysis," it is an abuse of the district court's discretion "to rely on such policies to the near exclusion of other relevant factors touching on predominance." *Id*. at 955; *see also Myers v. Hertz Corp*., 624 F.3d 537, 549 (2d Cir. 2010) (explaining that an employer's blanket exemption policy is relevant, but

Defendants maintain that the evidence at trial showed that LAETs had different training experiences and did not use standardized training materials. Defendants rely on evidence showing that the length of time which LAETs spent in training varied, that General Sales Managers altered the training materials they used in their offices and that the training materials changed over the years.

While their tact has changed somewhat, the Court addressed these same arguments when they were raised by Defendants in their first motion to decertify. (Doc. 448, PAGEID 15940-15941). The Court noted that the topics covered in the training programs over the years has remained the same. (Doc. 448, PAGEID 15940). At trial, several versions of TQL's "Sales Playbook" and logistics training materials were made exhibits. (JX-2000, JX-2022, PX-73, PX-85, PX-92, PX-83). A re-review of these materials shows that there have been changes to the layout and some adjustment to the content, but the general subject matters have remained the same. This aligns with the trial testimony of Victor Nichols, a national sales trainer for TQL, who explained that at different times the Sales Playbook was "updated" to reflect changes in TQL's guidelines, or to make improvements in TQL's training program. (Doc. 548, Victor Nichols, II,

---

not determinative, in the predominance inquiry). The court explained: "[t]he fact that an employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." 571 F.3d at 959 (quoting *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 603 (E.D. Cal. 2008)); *see also* U.S. Dep't of Labor, Field Operations Handbook § 22c01(c) (2010) ("Whether a particular employee primarily performs exempt work depends on the actual duties performed.").

(Doc. 448, PAGEID 15937). The Court then went on to look at the actual duties being performed by the LAETs before concluding that Plaintiffs had demonstrated predominance under Rule 23(a)(3). (Doc. 448, PAGEID 15941-15946). Because there has never been a question that all LAETs were classified as exempt, and because the Court did not solely rely on TQL's company-wide classification of LAETs, this point does not warrant any further discussion in the body of this Opinion.

15

PAGEID 20519).  However, in a given time period, all LAETs were provided with the same version of the Sales Playbook.  (Doc. 548, Victor Nichols, II, PAGEID 20520).  All LAETs were also provided with the same Logistics Training Manual.  (Doc. 548, Victor Nichols, II, PAGEID 20518-20519).  In addition, training facilitators were provided with detailed guides and slides to use during logistics training presentations.  (See, e.g., PX-92).  There was also a "Program Schedule" which set a learning timeline for LAETs.   (PX-73, TOTQUAL099200).

There was testimony that General Sales Managers were able to develop their own Sales Playbook.  (Doc. 562, Rick Borkowski, PAGEID 22134). There was also testimony that training facilitators could create their own slides to use during logistics training presentations.  (Doc. 548, Victor Nichols, II, PAGEID 20520).  However, even if there were some modifications, the testimony at trial was that there is "always a core curriculum, a company-prescribed core curriculum."  (Doc. 562, Rick Borkowski, PAGEID 22145). Therefore, any modifications by the General Sales Managers served as a "supplement" to the Sales Playbook produced by TQL.  (Doc. 562, Rick Borkowski, PAGEID 22193). Moreover, TQL President Kerry Byrne testified that providing consistent training was a priority for the company and all LAETs receive the same type of training.  (Doc. 543, PAGEID 20248-20249).

It is undisputed that the length of TQL's training program changed from time-to-time.  (Doc. 548, Victor Nichols, II, PAGEID 20587).  In addition, some LAETs who were "elite top performers" were moved into sales early.  (Doc. 562, Rick Borkowski, PAGEID 22144).  Each General Sales Manager would have four or five of these "exceptional" employees each year.  (Doc. 562, Rick Borkowski, PAGEID 22143).  However, regardless

of the length of time LAETs spent in training, all LAETs were required to complete TQL's sales training program to "earn a place on the sales floor as an LAE." (PX-83, TOTQUAL023424). Therefore, there is nothing about the differences in the length of training or updates to the training materials over the years which reflects a need for an individual inquiry to assess the applicability of the administrative exemption to LAETs.

Similarly, the factual variations in the day-to-day work experiences of the LAETs does not prevent a finding of predominance. Throughout the class period, job descriptions for the LAET position stated that the "tasks performed" included: building a portfolio of clients by researching and seeking out prospects; acting as the liaison between the client, carrier, shipper and receiver; negotiating fair rates with both the client and carrier; managing the movement of the client's goods, by ensuring they are picked up, transported and delivered on time; locating carriers for negotiated loads; communicating at least twice a day with the carrier during transport; accurately entering and maintain up-to-date information in the Load Manager database; working quickly to resolve problems; developing relationships with clients; actively participating in training programs, both classroom and on the job; and contributing to the growth of the business by referring quality candidates into the hiring process. (PX-30). As one witness at trial confirmed, LAETs had "tons of responsibilities . . . [i]t was everything from covering the load, to check calls, to problem solving when the load was over the road, to making sure that that load got delivered at our customer's expectations." (Doc. 554, Thomas Dillingham, PAGEID 21402). However, Defendants maintain that the specific tasks performed by LAETs out of this long list of tasks varied because some LAETs were given opportunities to exercise discretion and independent judgment, but others were not.

To begin, the Court reiterates that it will not engage in a free-ranging inquiry into the merits at the Rule 23 certification stage. *Accord Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. at 466. At this stage, the Court is not determining a LAET's primary duty or whether that primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Instead, predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). The Court notes that there were several TQL practices and policies affecting the exercise of discretion and independent judgment which applied to all LAETs.[8] This undercuts Defendants' argument that individual inquiries predominate over questions common to the class. *Accord Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2015 WL 1778326, at *9 (N.D. Cal. Apr. 17, 2015). Moreover, Defendants' argument asks this Court to adopt their interpretation of the evidence and assumes the Court finds their witnesses credible.

The Court is also not persuaded by the additional responsibilities handed over to an LAET when they were running their mentor LAE's book of business while their LAE mentor was on vacation, on their honeymoon or at lunch. (See e.g., Doc. 550, Thomas

---

[8]For instance, a LAET was only permitted to select carriers which were approved by TQL's Carrier Services Department. (Doc. 554, Emily Hubbard, PAGEID 21334; Doc. 543, Kerry Byrne, PAGEID 20198). While LAETs could select from the pre-approved carriers listed in the "Carrier Maintenance" database, LAEs would often give LAETs certain restrictions which would make some carriers ineligible or the LAE require the LAET to get the LAE's approval before using the carrier. (Doc. 548, Victor Nichols, II, PAGEID 20543, 20652; Doc. 542. Patrick Ryan Foley, PAGEID 19978; Doc. 542, Nicholas Newell, PAGEID 20075). In addition, if the load included "high-value cargo," the carrier would need to be approved by TQL's Operations Team. (Doc. 548, Victor Nichols, II, PAGEID 20583). In negotiating rates with carriers, LAETs would be limited by a price range set by their LAE mentor. (Doc. 554, Emily Hubbard, PAGEID 21335). Any rate outside that price range would need to be approved by the LAE. (Doc. 554, Emily Hubbard, PAGEID 21335). Any new customers would need to be approved by the TQL Credit Department. (Doc. 554, Thomas Dillingham, Jr., PAGEID 21392; Doc. 543, Kerry Byrne, PAGEID 20198).

Dillingham, PAGEID 208050; Doc. 551, Kyle Tharp, PAGEID 21102). Those arrangements were temporary and would not predominate over the analysis of whether LAETs were properly classified as exempt.

Therefore, the Court concludes that for the Rule 23 subclass of LAETs, the predominance and superiority requirements are satisfied.

The Court now turns to the arguments Defendants have presented with regards to the Junior LAE subclass.

### 4. Creation of the Junior LAE subclass

Defendants maintain that the creation of the Junior LAE subclass was legally improper. Defendants explain that "Junior LAE" was never an official title used by TQL. However, as this Court recognized when it initially certified the Junior LAE class, TQL internally referred to its newly-promoted, salary-only LAEs as Junior LAEs. (Doc. 337, PAGEID 9204). These Junior LAEs could be distinguished from the larger LAE group based on additional training sessions and coaching which targeted Junior LAEs. (Doc. 337, PAGEID 9206). Several documents show that TQL used the "Junior" designation in email correspondence and on internal documents such as sales training materials. (See, e.g., PX-191, TOTALQUAL078530) (explaining that the "Jr. LAE internal designation" would be used as part of a new sales training program beginning on January 14, 2008).

Defendants dispute the value of this evidence. (Doc. 573, PAGEID 23164). However, the Court finds that the label attached to this group of employees is largely irrelevant to the analysis of whether the Rule 23 prerequisites for class certification have been satisfied.

Next, Defendants argue that this Court's prior opinion denying decertification of the Junior LAE class was based on the finding that all Junior LAEs "spent a large portion of their time prospecting for customers" and had the same primary duty of "the selling of TQL's brokerage services," but then at trial, TQL presented witnesses who testified that they instead spent the majority of their time as Junior LAEs providing logistics services to customers. (Doc. 568, PAGEID 22913).

To begin, the Court notes that these statements in the prior opinion were made within the context of determining "the issue of whether a Junior LAE's primary duty is selling is susceptible to generalized, class-wide proof." (Doc. 448, PAGEID 15947).[9] The Court was not making a factual determination. In the same way, any evidence that a Junior LAE's primary duty was providing logistics services is also susceptible to generalized, class-wide proof. At the class certification stage, the Court is not making any factual or legal conclusions as to a Junior LAE's primary duty and whether the Junior LAEs are exempt. Therefore, the Court rejects Defendants' argument that the creation of the Junior LAE subclass was legally improper.

---

[9]This Court explained:

Although the administrative exemption inquiry involves determining the duties actually performed by each employee, "evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria . . . will tend to show that the subsidiary questions involved in resolving exemption will be answerable through evidence generally applicable to the class." *Perez v. Allstate Ins. Co.*, Case No. 11cv1812, 2014 WL 4635745, at *19 (E.D.N.Y. Sept. 16, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)). Here, there is evidence that tends to show that Junior LAEs performed their jobs in similar ways because they spent a large portion of their time prospecting for customers in order to reach their sales revenue goals. Therefore, the issue of whether a Junior LAE's primary duty is selling is susceptible to generalized, class-wide proof.

(Doc. 448, PAGEID 15947).

5. __Ascertainability for Junior LAE subclass__

Defendants argue that the subclass of the Junior LAEs does not meet the ascertainability requirement.

Acertainability is "an implied requirement that the putative class members can be readily identified based on the class definition." *Tarrify Properties, LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022) (citing *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d at 466, 471). "Courts have found ascertainability satisfied where 'the identities of the members of the proposed [subclasses] are identifiable and ascertainable based on the wage and hours' information maintained by defendant." *Dorsey v. Aviva Metals, Inc.*, No. 1:20-CV-02014, 2022 WL 4536393, at *7 (N.D. Ohio Sept. 28, 2022) (quoting *Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 2982005, at *6 (N.D. Ohio July 15, 2021)).

Defendants' argument with regard to ascertainability is solely based on their own lack of recordkeeping combined with their method of paying commission.  The definition of a Junior LAE is "a newly promoted LAE who is paid on a salary-only basis up until the point at which he or she declares or receives his or her first commission and therefore no longer considered to be 'Junior.'"  (Doc. 380, PAGEID 11321).  Defendants point out that under this definition, a Junior LAE is no longer a member of the class as soon as they declare commission.  Defendants claim there are no reliable records showing when individuals declared commission.  (Doc. 556, Joshua Mains, PAGEID 21540).  Defendants argue that because an LAE could declare commission at any time, someone could declare commission while they were still a LAET, or as soon as they became an LAE.  As examples, Defendants point to Austin Hansford and Craig Svellinger, who both

testified at trial. Defendants argue that these two people would mistakenly become part of the Junior LAE class even though they were never Junior LAEs. Defendants claim there is no way of knowing how many other people fall into this category or when the Junior LAE period ended for anyone. Defendants maintain that even though they have records showing when LAEs first received commission, these records do not show when a Junior LAE became a LAE because TQL did not pay commission to LAEs until the customer paid, which could be months later. In addition, TQL explains that LAEs did not receive a commission until their brokerage revenue exceeded their draw.

To be clear, Defendants' arguments are only applicable to part of the Junior LAE class. On January 5, 2015, TQL eliminated the draw system so that a Junior LAE automatically received their first commission when their brokerage revenue exceeds their base salary. (Doc. 543, Kerry Byrne, PAGEID 20327-20328). Therefore, a Junior LAE no longer needed to "declare" commission. This was the basis for the parties' joint request to amend the class definition. (Doc. 379). The definition of Junior LAE was amended to clarify that before 2015, membership in the Junior LAE class ended on the date the employee declared commission; and after 2015, membership ended on the date the employee received commission. (Doc. 379, PAGEID 11306).[10]

To satisfy the ascertainability requirement, a court "must be able to resolve the question of whether the class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). Here, the Junior LAE class is defined by objective criteria. Class members are in

---

[10]The Court notes that the Joint Motion stated: "Although TQL joins this Motion, TQL objects generally to the certification of subclasses in this case and preserves its objections to class certification and the right to appeal class certification." (Doc. 379, PAGEID 11306).

the class after they are promoted from the LAET position to the Junior LAE position, and they are no longer members of the Junior LAE class when they either declare commission or start receiving commission.  The mere lack of records does not defeat certification. *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015) (determining that "[t]he proposed class is defined by objective criteria: anyone who purchased [the product] in [specific states]" and can be "determined with reasonable—but not perfect—accuracy" through "substantial review, likely of [defendant's] internal [ ] data"); *Galoski v. Applica Consumer Prod.*, 309 F.R.D. 419, 422 (N.D. Ohio 2015) ("A company's failure to keep purchase records cannot provide an automatically defense to class certification.").  Even if TQL's records do not show the exact date individuals declared commission, TQL certainly has employment and payroll records showing who it employed and paid as a LAE.  These records may be supplemented with affidavits to establish when the individual first declared commission.  *See Rikos v. Procter & Gamble Co.*, 799 F.3d at 526; *see also Kopaleishvili v. Uzbek Logistics, Inc.*, No. 1:17-CV-702, 2019 WL 6609212, at *4 (S.D. Ohio Dec. 5, 2019) (concluding ascertainability requirement was satisfied because plaintiffs could supplement the record with affidavits to the extent the defendants were unable to produce the contracts).

At bottom, Defendants' argument is more about the length of time class members spent as Junior LAE, not whether they can be identified as members of the Junior LAE class.  This is an issue of damages, which can be decided at a later date after a finding of liability.  *See Hargrove v. Sleepy's LLC*, 974 F.3d 467, 481 (3d Cir. 2020) (recognizing that "the exact damages owed each [class member] is not an ascertainability issue"); *Galoski v. Applica Consumer Prod.*, 309 F.R.D. at 422 (explaining lack of sales records

does not go to the ascertainability of the class, but rather to the verification of claims in the event that plaintiffs later prevail); *Black v. Gen. Info. Servs., Inc.*, No. 1:15 CV 1731, 2016 WL 899295, at *4 (N.D. Ohio Mar. 2, 2016) ("Defendant's argument goes not to the ascertainability of the class, as the Sixth Circuit has defined it, but rather to the potential for over burdensome discovery or difficulty in the verification of the claims should the Plaintiffs prevail. These are issues to be addressed at a later time, and only if necessary.").

To the extent that the class definition may erroneously include a few employees like Austin Hansford and Craig Svellinger who never served as a Junior LAE, or served as a Junior LAE for a very short period of time, those determinations can also be made at a later stage.  *See City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 442, n.4 (3d Cir. 2017) ("While a high degree of over-inclusiveness could prevent certification, any degree of over-inclusiveness will not do so."); *see also Lyngaas v. Ag*, 992 F.3d 412, 432 (6th Cir. 2021) (explaining that the defendant's concern that some individuals will erroneously be afforded damages is "alleviated by the claims-administration process designed by the district court to weed out those who do not fit within the class definition.").  Therefore, the Court concludes that for the Rule 23 class of Junior LAEs, the ascertainability requirement is satisfied.

## B. <u>Decertification of FLSA Collective</u>

A district court may revisit its certification of an FLSA collective upon a defendant's post-trial motion. *See*, *e.g.*, *Garcia v. Tyson Foods*, 890 F. Supp. 2d 1273, 1282 (D. Kan. 2012) (denying the defendant's post trial motion to decertify the FLSA collective); *Chavez v. IBP, Inc.*, No. CV-01-5093-RHW, 2005 WL 6304840, at *2 (E.D. Wash. May 16, 2005)

(ruling on a post-bench trial motion to decertify and noting that a collective action under § 216(b) is "preliminary until final judgment is issued, and [is] subject to modification prior to a decision on the merits"); *see also Baldridge v. SBC Comm., Inc.*, 404 F.3d 930, 931 (5th Cir. 2005) (explaining that a FLSA conditional certification order "is subject to revision before the district court addresses the merits").

"Generally, during the decertification stage, courts consider the following factors to determine if the parties are similarly-situated: (1) the disparate factual and employment settings of the individual plaintiffs such as job duties, geographic location, supervision and salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations of resolving the claims collectively." *Kutzback v. LMS Intellibound, LLC*, 301 F. Supp. 3d 807, 817 (W.D. Tenn. 2018) (citing *White v. MPW Industrial Serv., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006); and *Creely v. HCR ManorCare, Inc.*, 920 F.Supp.2d 846, 851 (N.D. Ohio 2013)).

The FLSA collective action requirements are less stringent than Rule 23's requirements. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016) (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (section 216(b)'s "similarly situated" requirement is less stringent than Rule 23(b)(3)'s requirement that common questions predominate for a 23(b)(3) class to be certified)).  Because the Court has found that Rule 23's requirements have been satisfied for the LAET subclass, the Court also finds that the LAETs were similarly situated for purposes of the FLSA.

Defendants' main argument for decertifying the Junior LAE sub-collective is that these employees had materially different experiences that directly impact the applicability of their administrative exemption defense. However, as the Sixth Circuit has explained: "individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017) (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016); *see also Creely v. ManorCare, Inc.*, 920 F.Supp.2d 846, 856 (N.D. Ohio 2013) ("Where plaintiffs' factual and employment settings are similar, these defenses do not necessarily render collective treatment unmanageable.") (quoting *Frye v. Baptist Mem'l Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *9 (W.D. Tenn. Sept. 27, 2010), *aff'd* 495 F. App'x 669 (6th Cir. 2012)).

In this case, the Junior LAEs had similar factual and employment settings. While Defendants have highlighted differences in specific job duties and variations in how some Junior LAEs were managed by their supervisors, these differences do not prevent collective treatment. "[P]laintiffs must only be similarly—not identically—situated to proceed collectively." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. CIV.A. 06-299-JBC, 2008 WL 2885230, at *8 (E.D. Ky. July 22, 2008) (quoting *Falcon v. Starbucks Corp.*, 2008 WL 155313, *4 (S.D.Tex. 2008)). In addition, Defendants raise the same defense against every member of the class: Plaintiffs are exempt from the overtime-pay requirement under the FLSA based on the administrative exemption found in 29 C.F.R. § 541.200(a). Therefore, Defendants raise one defense and do not raise "individualized defenses." *See Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18CV2017, 2022 WL

26

17552396, at *12 (N.D. Ohio Dec. 9, 2022) ("Defendants state that they will raise [the administrative exemption] defense at trial, but do not explain how it constitutes an 'individualized defense' or cite any authority supporting the proposition that decertification is warranted where an employer argues that a collective class of employees are exempt from the FLSA's overtime provisions.").

As part of evaluating Defendants' administrative exemption defense, the Court will determine whether the Junior LAE's primary duty was prospecting for customers—as Plaintiffs claim—or providing logistics services—as Defendants contend.   Any contradictions in testimony among these witnesses "are matters of credibility for the factfinder, not individualized defenses." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 2885230, at *10 (quoting *Pendlebury v. Starbucks Coffee Co*., 518 F.Supp.2d 1345, 1362 (S.D.Fla. 2007)).   That is because the question is not whether Defendants have defenses to liability, but whether these defenses can be "adequately presented in a collective forum." *Callaway v. DenOne LLC*, No. 1:18-CV-1981, 2019 WL 2610660, at *3 (N.D. Ohio June 26, 2019) (quoting *Monroe v. FTS USA, LLC*, 860 F.3d at 406).   During the trial of this matter, Defendants were indeed able to adequately present their defense by examining representative Plaintiffs and presenting their own evidence.   By the same token, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Therefore, Court concludes that the Junior LAEs are similarly situated, and the issue of individualized defenses does not warrant decertification of this sub-collective.

## IX. <u>CONCLUSION</u>

Based on the foregoing, this Court concludes that the subclasses of LAETs and Junior LAEs which were previously certified as to liability only under Federal Rule of Civil Procedure 23 (Docs. 273, 337) and the sub-collectives of LAETs and Junior LAEs previously certified under 29 U.S.C. § 216(b) (Doc. 395) shall remain certified.  Therefore, Defendants Total Quality Logistics, LLC and Kenneth Oaks' Post-Trial Motion to Decertify (Doc. 568) is **DENIED**.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
JUDGE MICHAEL R. BARRETT